THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMANDA KIM, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>vs.<br><br>OVASCIENCE, INC., CHRISTOPHER KROEGER, RICHARD ALDRICH, JEFFREY CAPELLO, MARY FISHER, JONATHAN HOWE, MARC KOZIN, and JOHN SEXTON,<br><br>      Defendants. | Civil Action No:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Amanda Kim ("Plaintiff"), on behalf of herself, by her undersigned attorneys, for their complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of herself and all other similarly situated public stockholders of OvaScience, Inc. ("OvaScience" or the "Company") against OvaScience and the members of the Company's board of directors (referred to as the "Board" or the "Individual Defendants," and, together with OvaScience, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of OvaScience by Millendo

1

Therapeutics, Inc. ("Millendo").

2. On August 8, 2018, OvaScience, Millendo, and Orion Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of OvaScience ("Merger Sub"), entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into Millendo, with Millendo surviving as a wholly owned subsidiary of OvaScience (the "Proposed Transaction").

3. Pursuant to the exchange ratio formula of the Merger Agreement, on a pro forma basis and based upon the number of shares of OvaScience common stock to be issued in the Proposed Transaction, current OvaScience stockholders will own approximately 20% of the combined company and current Millendo investors will own approximately 80% of the combined company (the "Merger Consideration").

4. On November 6, 2018, in order to convince OvaScience's public common stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses prepared by the Company's financial advisor, Ladenburg Thalmann & Co. Inc. ("Ladenburg Thalmann"), in support of their fairness opinion and (ii) the potential conflicts of interest faced by the Board during the sales process leading up to the Proposed Transaction.

6. Additionally, the Proxy disclosed that the special meeting of OvaScience's stockholders to vote on the Proposed Transaction will be held on December 4, 2018 (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted

from the Proxy is disclosed prior to the Stockholder Vote so OvaScience stockholders can properly exercise their corporate suffrage rights.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because that each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect in this District; (ii) each of the Individual Defendants (defined below) either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

10. ***Plaintiff Amanda Kim*** is, and at all relevant times, has been an OvaScience stockholder.

**Defendants**

11.     ***Defendant OvaScience*** is a Delaware corporation with its principal executive offices located at 9 Fourth Avenue, Waltham, Massachusetts 02451. OvaScience is a company focused on the discovery and development of new treatment options for women and families struggling with infertility. OvaScience common stock is traded on Nasdaq Capital Market under the ticker symbol "OVAS."

12.     ***Defendant Christopher Kroeger*** ("Kroeger") is, and has been at all relevant times, a director of the Company, and currently serves as the Company's Chief Executive Officer.

13.     ***Defendant Richard Aldrich*** ("Aldrich") is, and has been at all relevant times, a director of the Company. In addition, Richard Aldrich is a co-founder and Partner of Longwood Fund.

14.     ***Defendant Jeffrey Capello*** ("Capello") is, and has been at all relevant times, a director of the Company.

15.     ***Defendant Mary Fisher*** ("Fisher") is, and has been at all relevant times, a director of the Company.

16.     ***Defendant Jonathan Howe*** ("Howe") is, and has been at all relevant times, a director of the Company.

17.     ***Defendant Marc Kozin*** ("Kozin") is, and has been at all relevant times, a director of the Company.

18.     ***Defendant John Sexton*** ("Sexton") is, and has been at all relevant times, a director of the Company.

19.     The parties in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public stockholders of OvaScience (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

21. This action is properly maintainable as a class action because:

(a) the Class is so numerous that joinder of all members is impracticable. As of October 26, 2018, there were 35,826,429 shares of OvaScience common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of the Company will be ascertained through discovery;

(b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of

the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22. On August 9, 2018, the Company and Millendo issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **OvaScience and Millendo Therapeutics Announce Merger to Create Leading Rare Endocrine Disease Company**
>
> — Transaction to Advance Millendo's Compelling Pipeline of Late-Stage Programs for Orphan Endocrine Diseases Including Prader-Willi Syndrome —
>
> — Companies to Host Conference Call to Discuss Transaction at 8:30 a.m. ET —
>
> WALTHAM, Mass. and ANN ARBOR, Mich., August 9, 2018 — OvaScienceSM (Nasdaq: OVAS) and privately-held Millendo.
>
> Therapeutics, Inc., a clinical-stage biopharmaceutical company focused on developing novel treatments for orphan endocrine diseases, announced today that they have entered into a definitive agreement under which OvaScience will merge with Millendo in an all-stock transaction. The merged company will focus on advancing Millendo's pipeline of distinct and transformative treatments for orphan endocrine diseases. Upon shareholder approval, the combined company is expected to operate under the name Millendo Therapeutics and trade on the Nasdaq Capital Market under the ticker symbol MLND.
>
> An investor syndicate that includes New Enterprise Associates, Frazier Healthcare Partners, Roche Venture Fund, Innobio managed by Bpifrance, Osage University Partners, Altitude Life Science Ventures, Adams Street Partners, and Longwood Fund has committed to invest $30 million in the combined company. This financing will help fund the further development of Millendo's lead assets, livoletide (AZP-531) and nevanimibe (ATR-101) and is expected to close before or concurrently with the completion of the merger. The total cash balance of the combined company

following the closing of the merger and the financing is expected to be at least $70 million.

Millendo is leveraging its deep understanding of recent biological discoveries in endocrinology to build a strong pipeline based on its clinically-validated molecules with differentiated mechanisms.

Millendo's lead asset, livoletide, is an unacylated ghrelin analogue being developed for the treatment of Prader-Willi syndrome, a rare genetic disease characterized by hyperphagia, a chronic unrelenting hunger, that leads to obesity, metabolic dysfunction, reduced quality of life and early mortality. Livoletide demonstrated positive effects in improving hyperphagia and food-seeking behaviors in a Phase 2 study in Prader-Willi syndrome and is expected to advance into a pivotal Phase 2b/3 study in the first quarter of 2019. Millendo is also developing nevanimibe, an ACAT1 inhibitor for the treatment of two orphan adrenal diseases: classic congenital adrenal hyperplasia (CAH) and endogenous Cushing's Syndrome. Nevanimibe demonstrated positive proof-of-concept and a favorable safety profile in an open-label Phase 2 trial in CAH and is expected to advance into a Phase 2b study in the third quarter of 2018.

"We are excited about the opportunities created by this merger, as it positions us to become a leader in rare endocrine diseases with the funding needed to pursue the potential approval and commercialization of our first-in-class programs," said Julia Owens, Ph.D., President and Chief Executive Officer of Millendo. "Our objective has always been to deliver meaningful therapies to patients who do not have sufficient treatment options, and with this merger, the compelling clinical data for our programs, and the initiations of late-stage trials for both livoletide and nevanimibe expected in the months ahead, we are optimistic that we can deliver on this vision."

"Following an extensive and thorough review of strategic alternatives, we believe that this merger with Millendo is the best path forward and has the potential to deliver significant and immediate value to OvaScience shareholders," said Christopher Kroeger, M.D., Chief Executive Officer of OvaScience. "We are certain that the strength and dedication of the Millendo leadership team provides our combined company with the capabilities to develop new and much-needed therapies for patients with orphan endocrine diseases."

**About the Proposed Transaction**

On a pro forma basis and based upon the number of shares of OvaScience common stock to be issued in the merger, current OvaScience shareholders will own approximately 20% of the combined company and current Millendo investors will own approximately 80% of the combined company (before accounting for the additional financing transaction). The actual allocation will be subject to adjustment based on OvaScience's net cash balance at the time of closing and the amount of any additional financing consummated by Millendo at or before the closing of the merger.

The transaction has been approved by the board of directors of both companies. The merger is expected to close in the fourth quarter of 2018, subject to the approval of OvaScience shareholders at a special shareholder meeting, as well as other customary conditions. Ladenburg Thalmann & Co. Inc. is acting as financial advisor to OvaScience for the transaction and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. is serving as legal counsel to OvaScience. Cooley LLP is serving as legal counsel to Millendo.

23. The Merger Consideration is excessive and unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will hold in the combined business entity.

24. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

## THE MATERIALLY INCOMPLETE AND MISLEADING FORM S-4

25. On November 6, 2018, Defendants filed an incomplete and misleading Form S-4 with the SEC and disseminated it to the Company's stockholders. The Form S-4 solicits the Company's stockholders to vote in favor of the Proposed Transaction.

26. Defendants were obligated to carefully review the Form S-4 before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

27. First, the Form S-4 describes Ladenburg Thalmann's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Ladenburg Thalmann's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, the Company's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Ladenburg Thalmann's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total

mix of information available to the Company's common stockholders.

28. With respect to Ladenburg Thalmann's discounted cash flow ("DCF") analysis prepared in support of its August 8, 2018 fairness opinion (the "August Opinion"), the Form S-4 fails to disclose: (a) projections as to cost and expenses, reports, preliminary internal market opportunity assumptions and other information concerning Millendo; and (b) the inputs and assumptions underlying the calculation of the discount rates ranging from 14% to 16%. *See* Form S-4at 150-51.

29. Moreover, with respect to Ladenburg Thalmann's DCF analysis prepared in support of its October 26, 2018 fairness opinion (the "October Opinion"), the Form S-4 fails to disclose: (a) projections as to cost and expenses, reports, preliminary internal market opportunity assumptions and other information concerning Millendo; and (b) the inputs and assumptions underlying the calculation of the discount rates ranging from 14% to 16%. See Form S-4 at 161-62.

30. These key inputs are material to the Company stockholders, and their omission renders the summary of Ladenburg Thalmann's DCF analyses incomplete and misleading

31. Without this information, the Company's stockholders cannot evaluate for themselves the reliability of Ladenburg Thalmann's DCF analyses, make a meaningful determination of whether the implied total enterprise value ranges reflect the true value of the Millendo or, instead, are the result of Ladenburg Thalmann's unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

32. With respect to Ladenburg Thalmann's Analysis of Selected Precedent Transactions as of the Date of the October Opinion, the Form S-4 fails to disclose why the Enterprise Value for the Wilson Therapeutics AB and Alexion Pharmaceuticals, Inc. merger

changed between the August Opinion and October Opinion:

**Selected Phase 2 or Phase 3 Orphan Disease Precedent Transactions—August**

| Month and Year Closed | Target Company | Acquirer | Enterprise Value ($MM) |
|---|---|---|---|
| April 2018 | Wilson Therapeutics AB | Alexion Pharmaceuticals, Inc. | 693.5 |
| December 2017 | Alizé Pharma SAS | Millendo Therapeutics, Inc. | 62.0 |
| November 2015 | Dyax Corporation | Shire plc | 5,598.6 |
| September 2015 | Scioderm, LLC | Amicus Therapeutics, Inc. | 869.5 |
| March 2015 | Auspex Pharmaceuticals, Inc. | Teva Pharmaceutical Industries Limited | 3,200.0 |
| February 2015 | Meritage Pharma, Inc. | Shire plc | 244.9 |
| January 2015 | Trophos SA | Roche Holding AG | 548.7 |
| January 2015 | Biogen Idec, Inc. | Convergence Pharmaceuticals Limited | 675.0 |
| November 2014 | Prosensa Holding N.V. | BioMarin Pharmaceutical Inc. | 838.9 |
| October 2014 | Brabant Pharma Limited | Zogenix Europe Limited | 130.2 |

Form S-4 at 150.

**Selected Phase 2 or Phase 3 Orphan Disease Precedent Transactions—October**

| Month and Year Closed | Target Company | Acquirer | Enterprise Value ($MM) |
|---|---|---|---|
| October 2018 | Agilis Biotherapeutics, LLC | PTC Therapeutics, Inc. | 945.0 |
| April 2018 | Wilson Therapeutics AB | Alexion Pharmaceuticals, Inc. | 788.4 |
| December 2017 | Alizé Pharma SAS | Millendo Therapeutics, Inc. | 62.0 |
| November 2015 | Dyax Corporation | Shire plc | 5,598.6 |
| September 2015 | Scioderm, LLC | Amicus Therapeutics, Inc. | 869.5 |
| March 2015 | Auspex Pharmaceuticals, Inc. | Teva Pharmaceutical Industries Limited | 3,200.0 |
| February 2015 | Meritage Pharma, Inc. | Shire plc | 244.9 |
| January 2015 | Trophos SA | Roche Holding AG | 548.7 |
| January 2015 | Biogen Idec, Inc. | Convergence Pharmaceuticals Limited | 675.0 |
| November 2014 | Prosensa Holding NV | BioMarin Pharmaceutical Inc. | 838.9 |
| October 2014 | Brabant Pharma Limited | Zogenix Europe Limited | 130.2 |

Form S-4 at 161.

33. The failure to explain the change in the Wilson Therapeutics AB and Alexion Pharmaceuticals, Inc. merger's enterprise value renders the summary of both precedent transactions analyses materially incomplete and misleading.

34. In sum, the corrected value or a detailed explanation concerning the different enterprise values must be disclosed so the Company stockholders can determine whether the total enterprise values set forth in the Proxy actually reflect the true value of Millendo and, ultimately, whether the Proposed Transaction is in their best interest.

35. Finally, the Form S-4 fails to disclose material information concerning the sales

process leading up to the Proposed Transaction and potential conflicts of interest faced by the Board.  Specifically, the Form S-4 discloses that in connection with the Proposed Transaction:

> Millendo intends to complete a private placement financing (the "Pre-Closing Financing") of the Millendo Common Stock.  The securities issued in the Pre-Closing Financing will be issued pursuant to an exemption from the registration requirements of the Securities Act of 1933, as amended, and the resale of the OvaScience securities into which such securities will be exchanged and converted are not registered on this registration statement and will not be registered for resale.  An investor syndicate that includes New Enterprise Associates, Frazier Healthcare Partners, Roche Venture Fund, Fonds Innobio managed by Bpifrance, Osage University Partners, Altitude Life Science Ventures, Adams Street Partners, and **Longwood Fund** has committed to invest $25.0 million plus €4.0 million or its USD equivalent of the amount to be sold in the Pre-Closing Financing, $8.0 million of which has already been funded via the issuance of interest-bearing convertible promissory notes (as amended).

*See* Form S-4 at 8 (Emphasis added).

36. Notably, the convertible promissory notes issued in the Pre-Closing Financing will be converted into shares of Company common stock in the Proposed Transaction.  As a result, the additional shares that will be issued in the Pre-Closing Financing will cause the Company stockholders holdings in the combined entity will be further diluted from approximately 18.6% to 17.1%.  *See* Form S-4 at 5-6.

37. Furthermore, Longwood Fund III, L.P., an investment fund, has agreed to purchase $662,933.33 of shares in the Pre-Closing Financing, and to have $241,066.67 of unsecured convertible promissory notes issued to it by Millendo cancelled as part of that financing.  *See* Form S-4 at 166.

38. However, Richard Aldrich—the COmpany's Lead Independent Director—is one of the managers of Longwood Fund III GP LLC, which is the general partner of Longwood Fund III, LP, and the Proxy fails to disclose: (a) whether the Board evaluated the potential conflict of interest that resulted from Richard Aldrich's position on the Board while serving as a manager of

Longwood Fund III GP LLC; (b) when the Company and Millendo first considered the Pre-Closing Financing in connection with the Proposed Transaction; and (c) Richard Aldrich's involvement in the discussions and negotiations regarding the Proposed Transaction and Longwood Fund's participation in the Pre-Closing Financing.

39. Such information is material to the Company stockholders so they can determine whether the Board was composed of truly independent individuals who acted in the best interests of the Company and its stockholders or, instead, were conflicted and steered the sales process in a manner that gave priority to their own personal interests.

40. In sum, the omission of the above-referenced information renders the Form S-4 materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming stockholder vote, Plaintiff and the other members of the Class will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Form S-4 with the intention of soliciting stockholders support for the Proposed Transaction. Each Defendant reviewed and authorized the dissemination of the Form S-4, which fails to provide critical information detailed above.

45. In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a). Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Form S-4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46. The Form S-4 is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

47. Defendants knew or should have known that the material information identified

above has been omitted from the Form S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Form S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. Defendants violated securities laws in preparing and reviewing the Form S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws. Defendants chose to omit material information from the Form S-4 or failing to notice the material omissions in the Form S-4 upon reviewing it, which they were required to do carefully as the Company's directors.

49. The misrepresentations and omissions in the Form S-4 are material to Plaintiff and the Company's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF**
**SECTION 20(A) OF THE EXCHANGE ACT)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Form S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Form S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Form S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as set forth in the Form S-4 sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Form S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A)     declaring that the Form S-4 is materially false and/or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction until the Form S-4 is cured;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 21, 2018

                                **GAINEY McKENNA & EGLESTON**

                                By: *Thomas J. McKenna*
                                    Thomas J. McKenna
                              Gregory M. Egleston
                              440 Park Avenue South
                              New York, NY  10016
                              Telephone: (212) 983-1300
                              Facsimile: (212) 983-0380
                              Email: tjmckenna@gme-law.com
                              Email: gegleston@gme-law.com

                              ***Attorneys for Plaintiff***